FILED
2012 Apr-26  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAWRENCE JOHNSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.:  2:11-CV-855-VEH** |
| | ] | |
| **CITY OF BIRMINGHAM, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

## I.     INTRODUCTION AND PROCEDURAL HISTORY

This civil rights case initiated by Plaintiff Lawrence Johnson ("Mr. Johnson") came to federal court when it was removed on March 2, 2011.  (Doc. 1).  The defendants that remain in the lawsuit are Chief of Police A. C. Roper ("Chief Roper"), sued individually and in his official capacity, and the City of Birmingham ("COB").

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 33) filed on January 27, 2012.  Defendants also filed their brief and evidence in support of their Motion for Summary Judgment on January 27, 2012.  (Doc. 34).

Mr. Johnson filed his opposition to summary judgment (Doc. 35) on February 16, 2012, and related evidentiary material (Doc. 36) on February 17, 2012.  On

February 29, 2012, Defendants filed their reply (Doc. 37) as well as a Motion To Strike Plaintiff's Additional Facts and Legal Arguments Associated Therein in Plaintiffs' Response to Summary Judgment (Doc. 38) (the "Motion To Strike").  Mr. Johnson has filed no opposition to the Motion To Strike.

Both motions are now under submission.  For the reasons explained below, Defendants' Motion To Strike and Motion for Summary Judgment are both due to be granted.

## II.    STATEMENT OF FACTS[1]

Mr. Johnson maintains that on or about February 22, 2009, he was at night club in the Southside area of downtown Birmingham with some friends.  Upon leaving the night club, Mr. Johnson asserts that "Officer Jackson" and several unidentified officers pulled up next to him and without provocation jumped out of the police vehicles and began attacking him.

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  This statement is based upon Defendants' Statement of the Case (Doc. 34 at 3) as modified by Mr. Johnson's response. (Doc. 35 at 4-5).

Mr. Johnson states that he was struck multiple times in the head with a closed fist by one of the surrounding officers and was kicked in the face multiple times. According to Mr. Johnson, Officer Jackson Officer Jackson made several derogatory racial comments to him, such as "we aren't ready for change because 'ya'll' are out here doing the same thing" and "gonna shoot you".

Mr. Johnson never filed a written complaint against Officer Jackson or any other Birmingham police officer with the Internal Affairs Division of the Birmingham Police Department.  Mr. Johnson filed suit on February 22, 2011, against Officer Jackson, Chief Roper, and the COB in the Circuit Court of Jefferson County, and the case was subsequently removed to this court on March 2, 2011.  (Doc. 1).  The court dismissed Officer Jackson from the case on April 16, 2012, due to a failure to prosecute.  (Doc. 39).

## III.   APPLICABLE STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## B.    Failure To Oppose

Mr. Johnson's failure to file any opposition to Defendants' Motion To Strike is not without significant repercussions.  As explained by Judge Steele in *Williams v. Quality Filters, Inc.*, No. 07-0015-WS-B, 2007 WL 4219201, *1 (S.D. Ala. Nov. 27, 2007):

> Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ( "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a . . . motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant). Clearly, "the onus is upon the parties to formulate arguments." *Resolution Trust*, 43 F.3d at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf.").

Accordingly, plaintiff's decision not to respond to the Motion is at her peril.

*Williams*, 2007 WL 4219201, *1.

### C.    Qualified Immunity

Chief Roper asserts that qualified immunity bars Mr. Johnson's § 1983 claims brought against him in his individual capacity.  (Doc. 34 at 19).  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quotation marks omitted).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  *Id.* at 1357-58.

This is a two-part test.  Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  Next, the defendant must prove that he or she was "executing that job-related function."  *Id.* at 1267.  "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."

*Cottone*, 326 F.3d at 1358.[2]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established."  *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed.  *Hope*, 536 U.S. at 739.  This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

---

[2]  Here, there is no dispute about whether Chief Roper was acting within the scope of his discretionary authority.  (Doc. 35 at 24-25 (absence of any argument by Mr. Johnson contending that Chief Roper was acting beyond the scope of his discretionary authority)).

The "unlawfulness must be apparent" under preexisting law.[3]  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).  Therefore, a temporal requirement exists related to this inquiry.  More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation.  *See Anderson*, 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no

---

[3] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law.  *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

[preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**IV.    ANALYSIS**[4]

**A.    Defendants' Motion To Strike**

In their Motion To Strike, Defendants ask this court to strike paragraphs 1-7 and 21-26 of Mr. Johnson's statement of additional disputed facts (*see* Doc. 35 at 5-6, 10-11) and the legal arguments linked to those facts.  (Doc. 38 at 1).  Defendants base their Motion To Strike with respect to paragraphs 1-7 on a lack of their inadmissibility, including due to hearsay, as those facts are really allegations stemming from Mr. Johnson's complaint as opposed to evidentiary-based statements.

Defendants maintain that paragraphs 21-26 are due to be stricken because, while they are based upon the deposition testimony of Captain Jamal McCaskey, they are not "facts [showing] the official policies of the Birmingham Police Department" or the COB.  (Doc. 38 at 2).  Mr. Johnson has not offered any opposition to Defendants' Motion To Strike, despite the applicable schedule and briefing requirements of Appendix III to the court's uniform initial order (Doc. 2 at 23-25) entered on March 3, 2011.  Accordingly, the Motion To Strike is due to be granted, and the court will disregard the additional facts offered by Mr. Johnson that

---

[4]  The court assumes without deciding that Mr. Johnson's § 1983 supervisory claim is still cognizable post-*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

Case 2:11-cv-00855-VEH   Document 40   Filed 04/26/12   Page 10 of 17


Defendants have challenged and those portions of Mr. Johnson's arguments that pertain to those facts.

### B.    Defendants' Motion for Summary Judgment

#### 1.    Mr. Johnson has not *prima facially* established a § 1983 policy/supervisory capacity constitutional claim against either the COB of Chief Roper.

Mr. Johnson's § 1983 counts against the COB and Chief Roper are policy/supervisory-based. Count II is for a failure to train in the area of excessive force (Doc. 1 at 11 ¶¶ 22-23) and Count III is for deliberate indifference in "creat[ing] an atmosphere of tolerance regarding willful, wanton, and improper behavior of officers."[5]  (*Id.* at 12 ¶ 25).  While pled separately, these two counts are analyzed under the same constitutional framework.

The *Cottone* supervisory standard provides:

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal

---

[5]  Count I is not asserted against the COB or Chief Roper.  (Doc. 1 at 5-6 ¶¶ 20-21; *compare* Doc. 34 at 7 ("Count I is not against the City or Roper.")), *with* (Doc. 35 (absence of any opposition by Mr. Johnson as to this point)).

connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at \*5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at \*5 (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy ... result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at \*5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley*, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560–61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at \*4 (internal quotation marks and citation omitted).

362 F.3d at 1360-61.

Because it is undisputed that neither the COB nor Chief Roper personally participated in the treatment of Mr. Johnson, he must demonstrate a causal connection between the COB and/or Chief Roper's actions or inactions and the constitutional injury that he is claiming, *i.e.*, the use of excessive force and other misconduct that he endured when he was leaving the night club on February 22, 2009.

In attempting to show a causal connection, Mr. Johnson has offered no evidence to support the widespread unconstitutional conduct avenue. Similarly, Mr.

Johnson has pointed to no facts that would support "the inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Therefore, the only remaining route available to Mr. Johnson is evidence showing "a custom or policy that resulted in deliberate indifference to constitutional rights[.]" Here, Mr. Johnson contends that the COB and/or Chief Roper's failure to adequately train or their deliberate indifference about law enforcement officers working for the Birmingham Police Department is the policy or custom that led to the violation of his constitutional rights when he was being leaving the night club.

In addressing the failure to train as a custom or policy under § 1983, the Eleventh Circuit has clarified:

> Mrs. Belcher contends that Chief Anderson's failure to train his officers in the handling of suicidal inmates constituted deliberate indifference to her son's life. A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" and the failure has actually caused the injury of which the plaintiff complains. *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990); *Greason v. Kemp*, 891 F.2d 829, 837 n. 15 (11th Cir.1990); *cf. City of Canton v. Harris*, 489 U.S. 378, 388, 390, 109 S. Ct. 1197, 1204-05, 103 L. Ed. 2d 412 (1989) (addressing the analogous situation of municipal liability under section 1983). Only when the failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" that is necessary for section 1983 liability to attach. *City of Canton*, 489 U.S. at 389, 109 S. Ct. at 1205. Failure to train can amount

- 12 -

to deliberate indifference when the need for more or different training is obvious, *id.* at 390, 109 S. Ct. at 1205, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, *Greason*, 891 F.2d at 837, and when the failure to train is likely to result in the violation of a constitutional right, *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205.

*Belcher v. City of Foley*,  30 F.3d 1390, 1397-98 (11th Cir. 1994).

The record reflects, through the affidavit of Chief Roper (Doc. 34-1), that officers serving with the Birmingham Police Department receive training in excess of what is minimally required under the Alabama Police Officer Standards and Training Commission ("APOST").  (*See* Doc. 34-1 at 2 ("The Birmingham Police Academy curriculum for officers is over 800 hours, almost doubling the APOST requirements.")).  Against this undisputed training backdrop, Mr. Johnson has not shown "a history of abuse by subordinates" such that the COB and/or Chief Roper were "on notice of the need for corrective measures" in the form of additional instruction.  Mr. Johnson's situation also is not comparable to the use of deadly force example that the *Canton* Court utilized when illustrating that "the need for more or different training is so obvious, <u>and the inadequacy so likely to result in the violation of constitutional rights</u>, that the policymakers of the city can reasonably be said to have been <u>deliberately indifferent to the need</u>."  489 U.S. at 390 & n.10, 109 S. Ct. at 1205 & n.10 (emphasis added).

Instead, Mr. Johnson relies upon the circumstances surrounding the alleged night club incident as the sole basis to show deliberate indifference on the part of the COB and Chief Roper.  When, such as is the situation here, "[t]he policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the [defendant], and the causal connection between the 'policy' and the constitutional deprivation."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985) (footnote omitted).  Under such circumstances, Mr. Johnson has not demonstrated deliberate indifference on the part of either the COB or Chief Roper as the proof upon which he relies is simply to attenuated to solidify both the blameworthiness and causal links.  Accordingly, Mr. Johnson has not *prima facially* established an actionable § 1983 supervisory constitutional claim against either remaining defendant, and Defendants' Motion for Summary Judgment is due to be granted.

> **B.** **Alternatively, Mr. Johnson's individual capacity claim against Chief Roper also fails because has not satisfied the clearly established law and fair warning requirement.**

Mr. Johnson's § 1983 supervisory capacity constitutional claim against Chief Roper in his individual capacity alternatively and independently fails because he has

not satisfied the clearly established law and fair warning prong.  Under the qualified immunity framework, even if the evidence shows that a public official may have engaged in unconstitutional conduct, he still cannot be held individually liable for his actions unless he had fair warning.  A plaintiff meets this fair warning requirement through either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law.  *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).

In contesting the application of qualified immunity, Mr. Johnson suggests that Chief Roper should be personally liable for his constitutional injuries stemming from the alleged use of excessive force because of a lack of proper reporting, including the non-completion of incident and periodic reports.  (Doc. 35 at 24-25).  Assuming without deciding that a subordinate's use of excessive force is appropriately linked to a want in the supervision of a subordinate's reporting, in presenting this theory, Mr. Johnson has offered no materially similar controlling case law or sufficiently specific federal law that plainly demonstrates the illegality of Chief Roper's actions. Additionally, the court is not independently aware of any such umambiguous applicable authority.

Furthermore, this court is not obligated to address such a perfunctory and underdeveloped argument by Mr. Johnson.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Therefore, because Mr. Johnson has not shown how the fair warning requirement is met, he has not met his burden and qualified immunity protects Chief Roper from Mr. Johnson's pursuit of individual liability against him for unconstitutional supervision and/or deliberate indifference.   Accordingly, Defendants' Motion for Summary Judgment is alternatively due to be granted in favor of Chief Roper on lack of clearly established law and fair warning grounds.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion To Strike and Motion for Summary Judgment are due to be granted.  Further, the remaining portion of Mr. Johnson's lawsuit against the COB and Chief Roper is due to be dismissed with prejudice.  The court will enter a separate order.

**DONE** and **ORDERED** this the 26th day of April, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge